UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/18/2020

MALIBU MEDIA, LLC,

               Plaintiff,

     -against-

DOUGLAS BAKER,

               Defendant.

18-CV-3263 (JGK) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. JOHN G. KOELTL**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Malibu Media, LLC d/b/a X-Art.com (X-Art), a California limited liability company, filed this action under the Copyright Act, 17 U.S.C. § 101, *et seq.*, alleging that defendant Douglas Baker used the BitTorrent file distribution network (BitTorrent) to copy and distribute sixteen adult films (the Films) without authorization from X-Art, which owns the registered copyright in each Film. The Hon. John G. Koeltl, United States District Judge, granted plaintiff's motion for a default judgment against Baker and referred this action to me to conduct an inquest concerning plaintiff's damages.

For the reasons that follow, I respectfully recommend that X-Art be awarded $750 in statutory damages under 17 U.S.C. § 504(c)(1) for each of the nine copyrights that were registered before suit was commenced as to them, as required by 17 U.S.C. § 411(a), for a total of $6,750 in statutory damages and $400 in costs. In addition, I recommend that Baker be permanently enjoined from further infringement of those nine copyrights, and be ordered to delete and destroy any copies of the corresponding Films that were downloaded without X-Art's authorization from any computer, server, or other electronic storage device in his possession, custody, or control.

## I.    BACKGROUND

X-Art is a California limited liability company and the registered owner of the copyrights in the sixteen Films at issue in this action. Amend. Compl. (Dkt. No. 25) ¶ 22 & Ex. B. The Register

of Copyrights issued the following Certificates of Registration to plaintiff, with the following

effective dates, for the Films:

1.      PA0002116076, effective May 1, 2018;
2.      PA0002116056, effective May 1, 2018;
3.      PA0002109644, effective March 28, 2018;
4.      PA0002094797, effective November 28, 2017;
5.      PA0002078597, effective August 30, 2017;
6.      PA0002103950, effective February 1, 2018;
7.      PA0002031881, effective August 29, 2016;
8.      PA0002103843, effective February 1, 2018;
9.      PA0002100520, effective January 11, 2018;
10.     PA0002078611, effective August 30, 2017;
11.     PA00020420663, effective March 25, 2017;
12.     PA0002042072, effective March 25, 2017;
13.     PA0001846099, effective June 30, 2013;
14.     PA0002097524, effective January 3, 2018;
15.     PA0002094776, effective November 28, 2017; and
16.     PA0002094991, effective December 5, 2017.

Amend. Compl. Ex. B.

X-Art filed its original Complaint on April 13, 2018, alleging infringement of eleven of the

Films (those listed as Nos. 6-16 above) by a defendant identified as "John Doe subscriber assigned

IP Address 69.202.212.217."  Compl. (Dkt. No. 1) at 1, Ex. B. Plaintiff explained that although it

knew the unique internet protocol address (IP Address) used by the infringer – and had used

geolocation technology to trace that IP Address to a physical address located in this judicial district

– it did not yet know the infringer's name. *Id*. ¶¶ 1, 5-6, 9.[1]

In response to a third-party subpoena authorized by Judge Koeltl (Dkt. No. 15), defendant's

internet service provider (ISP) disclosed "Defendant's true identity"; that is, the name of the

subscriber to whom the ISP assigned the subject IP Address. Declaration of Kevin T. Conway

---

[1] "Each device that connects to the Internet needs a unique identifying number with which to communicate, called an 'IP address.'" *What is an IP address?*, APNIC, https://www.apnic.net/get-ip/faqs/what-is-an-ip-address/ (last visited June 18, 2020).

(Conway Decl.) (Dkt. No. 44) ¶ 3; Proposed Findings of Fact and Conclusions of Law (Prop. Findings) (Dkt. No. 51) ¶ 2. Plaintiff then filed its Amended Complaint on September 15, 2018, naming the subscriber – Baker – as the defendant and alleging that he infringed all sixteen of the Films now at issue. Amend. Compl. ¶ 2 & Ex. B.

Plaintiff explains that BitTorrent "is one of the most common peer-to-peer file sharing systems used for distributing large amounts of data, including, but not limited to, digital movie files." Amend. Compl. ¶ 10. Its popularity "stems from the ability of users to directly interact with each other in order to distribute a large file without creating a heavy load on any individual source computer and/or network. The methodology of BitTorrent allows users to interact directly with each other, thus avoiding the need for intermediary host websites which are subject to [Digital Millennium Copyright Act] take down notices and potential regulatory enforcement actions." *Id*. ¶ 11. The BitTorrent protocol breaks a large digital media file (such as a movie) into "many small pieces," each assigned a unique cryptographic "hash value" that serves as its digital fingerprint. *Id*. ¶¶ 12, 14, 15. Users exchange these small pieces among each other instead of attempting to distribute the (much larger) complete digital media file, which has its own unique hash value (a "file hash"). *Id*. ¶¶ 12, 16. Once a BitTorrent user receives all of the pieces of the digital media file, the "BitTorrent client software reassembles the pieces so that the file may be opened and utilized," and "uses the file hash to determine that the file is complete and accurate." *Id*. ¶¶ 13, 16.

Plaintiff alleges that its investigator, IPP International UG (IPP), established a direct Transmission Control Protocol (TCP) connection with Baker's IP Address. Amend. Compl. ¶ 17.[2]

___

[2] "[E]ach IP address can open and communicate over up to 65535 different 'ports' for sending and receiving data to or from any other network device. . . . A TCP/IP 'port' can be thought of as a private two-way communications line where the port number is used to identify a unique connection between two devices." *A brief overview of TCP/IP communications*, TAL tech,

From December 7, 2017, to January 29, 2018, IPP downloaded, from that address, one or more pieces of the digital media files corresponding, by file hash, to each of X-Art's copyrighted Films. *Id*. ¶¶ 18-21, 24 & Ex. A. In this manner "a full copy of each digital media file was downloaded from the BitTorrent distribution network" and reassembled for viewing, and each such media file was "verified to contain a digital copy of a movie that is identical (or alternatively, strikingly similar or substantially similar) to Plaintiff's corresponding original copyrighted work[s]." *Id*. ¶¶ 20-21.

On October 4, 2018, plaintiff served Baker with a summons and the Amended Complaint. Dkt. No. 33.) Service was made at 312 East 6th Street, Apt. A4, New York, NY 10003, which is the physical address to which plaintiff had traced the IP Address. Amend. Compl. ¶¶ 5-6. Baker did not appear, answer, or otherwise respond to the claims against him. On December 11, 2018, at X-Art's request (*see* Dkt. Nos. 35, 36), the Clerk of Court issued a Certificate of Default (Dkt. No. 37), and on December 26, 2018, X-Art moved for entry of a default judgment. (Dkt. No. 41.) On March 29, 2019, Judge Koeltl ordered plaintiff to serve its motion papers on Baker by April 5, 2019, which it did (Dkt. No. 46), and gave Baker until April 6, 2019, to respond. (Dkt. No. 45.) Baker failed to respond to the default motion. On April 12, 2019, Judge Koeltl held that plaintiff was entitled to a default judgment and referred the matter to me for an inquest on damages. (Dkt. Nos. 48, 49.)

By Order dated April 16, 2019 (Dkt. No. 50), I directed plaintiff to file proposed findings of fact and conclusions of law, supported by admissible evidence sufficient to support its proposed damages amount and any other remedy it sought. X-Art submitted its Proposed Findings on May

---

https://www.taltech.com/datacollection/articles/a_brief_overview_of_tcp_ip_communications (last visited June 18, 2020).

29, 2019, supported by the previously-filed Conway Declaration. Counsel for X-Art certified that

he served the Proposed Findings on Baker, by mail, at 312 East 6th Street, Apt. A4, New York,

NY 10003. Prop. Findings at 16. Once again, Baker failed to respond.

Plaintiff seeks statutory damages under the Copyright Act in the amount of $750 for each

of the sixteen Films at issue, for a total of $12,000 in statutory damages, plus costs in the amount

of $609, a permanent injunction against future infringement by defendant of "Plaintiff's

copyrighted works (the 'Works')," and an order requiring defendant to  "destroy all copies of

Plaintiff's Works that Defendant has downloaded onto any computer hard drive or server without

plaintiff's authorization," along with any copies "transferred onto any physical medium or device

in defendant's possession, custody, or control." Prop. Findings at 15.

Since neither party has requested a hearing on the issue of damages, and since defendant

did not submit any written materials, I have conducted the inquest based solely upon the materials

submitted by plaintiff. *See Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry &*

*Construction, LLC*, 779 F.3d 182, 189 (2d Cir. 2015) (quoting *Action S.A. v. Marc Rich & Co.*,

951 F.2d 504, 508 (2d Cir. 1991)) (finding that Fed. R. Civ. P. 55(b)(2), which governs the

determination of, *inter alia*, damages following default judgment, "allows but does not require the

district judge to conduct a hearing."); *De Lage Landen Fin. Servs., Inc. v. Universal Wilde, Inc.*,

2019 WL 4195441, at *3 n.2 (S.D.N.Y. Aug. 15, 2019) (finding that a hearing was not required

because plaintiff's sworn declarations were a sufficient basis on which to make a damages

calculation), *report and recommendation adopted*, 2019 WL 4194574 (S.D.N.Y. Sept. 3, 2019).

## II.    JURISDICTION AND VENUE

Because X-Art brought this action under the Copyright Act, subject-matter jurisdiction is properly based on 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (copyright jurisdiction). Amend. Compl. ¶ 4.

I am also satisfied as to personal jurisdiction over the defendant, which is "a necessary prerequisite to entry of a default judgment." *Sheldon v. Plot Commerce*, 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016). The Copyright Act does not contain its own personal jurisdiction or service provision. Thus, I must first "determine whether the defendant is subject to jurisdiction under the law of the forum state – here – New York," and then "consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). In this case, those questions are not difficult.

Plaintiff alleges that defendant resides in this district and that he committed the acts of copyright infringement described in the complaint at his residence. Amend. Compl. ¶¶ 5, 9 & Ex. A. Defendant is therefore amenable to general personal jurisdiction throughout the state under New York law, *see Digiprotect USA Corp. v. Does 1-266*, 2011 WL 1466073, at *3 (S.D.N.Y. Apr. 13, 2011) (citing N.Y. C.P.L.R. § 301), and the exercise of such jurisdiction comports with the requirements of the Due Process Clause. *See Sonera Holding*, 750 F.3d at 225 ("The paradigm forum for general jurisdiction over an individual is the individual's domicile, his home."); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) ("[A] court's general jurisdiction . . . permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.").

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). *See also* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1353 (3d ed. 2004) (service of process is "the means by which a federal court gives notice to the defendant and asserts jurisdiction over him"). Where the defendant has defaulted, the plaintiff must establish adequate service in order to obtain a default judgment. *See Sheldon*, 2016 WL 5107072, at *6 ("failure to adequately prove proper service of court documents under [Fed. R. Civ. P.] 4 bars the entry of a default judgment."); *Lliviganay v. Cipriani 110 LLC*, 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (lack of proof of proper service "is an independent obstacle to a default judgment."). Here there is no such obstacle.

New York law authorizes service "by delivering the summons within the state to the person to be served." N.Y. C.P.L.R. § 308(1). Plaintiff's Affidavit of Service filed on October 23, 2018, states that personal service was made on Douglas Baker, at 312 East 6th Street, Apt. A4, New York, NY 10003, on October 4, 2018. The record therefore reflects adequate service of process. *See* Fed. R. Civ. P. 4(e)(1) (service may be made on an individual by following state law in the state where the district court is located).

Venue is also proper in this district. *See* 28 U.S.C. § 1400(a) (a copyright action may be brought in "the district in which the defendant or his agent resides or may be found").

## III.    LIABILITY

Following a default, the court must accept all of the well-pleaded factual allegations in the complaint as true, except those relating to damages. *See Greyhound Exhibitgroup, Inc.* v. *E.L.U.L. Realty Corp.*, 973 F. 2d 155, 158 (2d Cir. 1992); *Finkel v. Romanowicz*, 577 F. 3d 79, 84 (2d Cir. 2009); *Cotton v. Slone*, 4 F. 3d 176, 181 (2d Cir. 1993). If the well-pleaded allegations establish

the defaulting party's liability, the only remaining issue is whether plaintiff has provided adequate support for its requested relief. *See Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F. 3d 151, 155 (2d Cir. 1999)).

To establish a violation of the Copyright Act, a plaintiff must demonstrate its ownership of a valid copyright and that the defendant copied "constituent elements of the work that are original." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (quoting *Feist Publications, Inc. v. Rural Telephone* Service *Co.*, 499 U.S. 340, 361 (1991)); *accord Malibu Media, LLC v. Doe*, 2015 WL 6116620, at *3 (S.D.N.Y. Oct. 16, 2015). It must also establish that each copyright upon which it sues was registered before the suit was instituted. 17 U.S.C. § 411(a). "[R]egistration occurs, and a copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright," not when the claimant first submits its registration application and related materials. *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, ___ U.S. ___, 139 S. Ct. 881, 886 (2019). Pre-suit registration "is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights[.]" *Id*. at 887.

In its Amended Complaint, X-Art alleges that it owns the copyrights in all sixteen Films. Amend. Compl. ¶ 22 & Ex. B. However, only four of the eleven copyrights pleaded in plaintiff's original Complaint were registered when that Complaint was filed on April 13, 2018. *See* Compl. Ex. B. The remaining seven were registered sometime between the filing of the original Complaint (which listed them as "pending") and the Amended Complaint (which listed them with registration numbers). *Compare* Compl. Ex. B *with* Amend. Compl. Ex. B. As to the seven copyrights that were not registered when this action was "instituted," *see United States ex rel. Wood v. Allergan, Inc*., 899 F.3d 163, 172 (2d Cir. 2018)) ("[l]egal proceedings are instituted by the origination of

8

formal proceedings, such as the filing of an initial complaint"), plaintiff's infringement claims are

barred by § 411(a). *See Malibu Media, LLC v. Doe*, 2019 WL 1454317, at \*2 (S.D.N.Y. Apr. 2,

2019) (rejecting argument that "the intervening registration of Plaintiff's copyrights [between the

filing of the original complaint and the filing of an amended complaint] now renders the action

compliant with Section 411(a)'s registration requirement," and dismissing case in its entirety); *Lee*

*v. Black Entertainment Television, LLC*, 2020 WL 1140795, at \*1 (S.D.N.Y. Mar. 6, 2020)

(dismissing plaintiff's copyright claim as to a "sizzle reel" because "plaintiff registered the sizzle

reel with the Copyright Office seven months after the original complaint was filed, but prior to the

filing of the [First Amended Complaint]"). As Judge Furman explained in *Malibu Media*, a

contrary result "would make a meaningless formality out of *Fourth Estate's* requirement that an

application be approved prior to filing suit [since] a plaintiff could file suit at any time,

notwithstanding Section 411(a)'s precondition, and simply update the complaint when registration

finally occurred." 2019 WL 1454317, at \*2.[3]

　　As to the claims not barred by § 411(a), plaintiff adequately alleges copyright infringement.

According to the Amended Complaint, defendant Baker used his IP Address and the BitTorrent

network to copy and distribute "constituent elements" of the Films – without plaintiffs' consent or

authorization – on specified dates between December 7, 2017, and April 3, 2018. *Id.* ¶¶ 17-18, 24,

30-31 & Ex. A. Those constituent elements were then reassembled to deliver a "full" digital copy

---

[3] As noted above, the Amended Complaint alleged, for the first time, that defendant infringed five additional copyrights. Two of the five were not registered when the original Complaint was filed, but all of them were registered by the time of the amendment. Amend. Compl. Ex. B. Since suit was not "instituted" as to the newly-pleaded copyrights until the filing of the Amended Complaint, § 411(a) is satisfied as to all of them. *See Ubiquiti Networks, Inc. v. Cambium Networks, Inc.*, 2019 WL 6034116, at \*1 (N.D. Ill. Nov. 14, 2019) ("Ubiquiti did not bring a copyright infringement claim as to the airOS 6.0 firmware until it filed the amended complaint, which occurred . . . after its copyright for that firmware was registered. So that claim was not prematurely filed . . . and may proceed with Ubiquiti's earlier filed claims[.]").

of each copyrighted Film at issue in this action. *Id*. ¶¶ 19-21, 23, 30 & Ex. A. By using BitTorrent

to copy and distribute constituent elements of the Films for reassembly and viewing by others,

defendant infringed plaintiff's exclusive rights (i) to reproduce the Films, in violation of 17 U.S.C.

§§ 106(1) and 501; (ii) to redistribute copies of the Films to the public, in violation of §§ 106(3)

and 501; (iii) to perform the Films, in violation of §§ 106(4) and 501; and (vi) to display the Films,

in violation of §§ 106(5) and 501. Amend. Compl. ¶¶ 32(A)-(D).

As in *Malibu Media, LLC v. John Does 1-11*, 2013 WL 3732839, at *5 (S.D.N.Y. July 16,

2013), plaintiff "has made a concrete, prima facie case of copyright infringement by alleging

ownership of the registered copyright and alleging unlawful downloading, copying, and

distribution of this work by specifying the type of technology used, the IP address from which the

file was accessed and shared, and the date and time of the infringement." *See also Patrick Collins,*

*Inc. v. John Doe 1*, 945 F. Supp. 2d 367, 377 (E.D.N.Y. 2013) ("[E]very court to have addressed

this issue has found a sufficiently alleged copyright infringement claim based on BitTorrent

technology, even when the defendant was merely identified by an IP address") (collecting cases).

Plaintiff further alleges that Baker acted "willfully" within the meaning of 17 U.S.C.

§ 504(c)(2). Amend Compl. ¶ 33. Plaintiff explains, in its Proposed Findings: "Defendant's acts of

infringement were committed with knowledge and willfulness. The very nature of the torrent

platform evidences Defendant's intent to infringe copyrights." Through his default, Baker has

admitted the allegation of willfulness. *See Cengage Learning, Inc. v. Shi*, 2015 WL 5167775, at

*5 (S.D.N.Y. Sept. 3, 2015), *report and recommendation adopted*, 2017 WL 1063463 (S.D.N.Y.

Mar. 21, 2017); *Noble v. Crazetees.com*, 2015 WL 5697780, at *7 (S.D.N.Y. Sept. 28, 2015)

("Where, as here, the defendant has defaulted, the complaint's allegations of willfulness may be

taken as true."); *CJ Prods. LLC v. Your Store LLC Online LLC*, 2012 WL 2856068, at *3 (S.D.N.Y.

July 12, 2012), *report and recommendation adopted*, 2012 WL 4714820 (S.D.N.Y. Oct. 3, 2012)

("Defendant has defaulted and is deemed to be a willful infringer by virtue of its default.").

## IV.   DAMAGES

In its Proposed Findings, plaintiff requests: (1) statutory damages under 17 U.S.C.

§ 504(c)(1); (2) reasonable costs under 17 U.S.C. § 505; (3) a permanent injunction, prohibiting

defendant from "directly, contributorily, or indirectly infringing Plaintiff's rights" in the Films; and

(4) an order that defendant permanently delete any infringing copies of the Films and/or any related

digital media files downloaded without X-Art's authorization onto any computer in his possession,

custody, or control. Prop. Findings at 15.

### A.   Statutory Damages Under the Copyright Act

Under the Copyright Act, a plaintiff who elects statutory damages is entitled to an award

of between $750 and $30,000 per work infringed, "as the court considers just." 17 U.S.C.

§ 504(c)(1). Where the infringement was "willful," the maximum permissible award per infringed

work rises to $150,000. *Id.* § 504(c)(2). An infringement is "willful" when the infringer (i) knew

its conduct was infringing, or (ii) engaged in infringing conduct as result of reckless disregard or

willful blindness to the prospect that its conduct was infringing. *Bryant v. Media Right Prods.*, 603

F.3d 135, 143 (2d Cir. 2010); *see also Island Software & Comput. Serv., Inc. v. Microsoft Corp.*,

413 F.3d 257, 263 (2d Cir. 2005); *Agence France Presse v. Morel*, 2014 WL 3963124, at *3

(S.D.N.Y. Aug. 13, 2014).

The Copyright Act affords the trial court "wide discretion" in setting the amount of

statutory damages. *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986);

*accord Noble*, 2015 WL 5697780, at *6; *Arista Records LLC v. Usenet.com, Inc.*, 2010 WL

3629688, at *4 (S.D.N.Y. Feb. 2, 2010), *report and recommendation adopted*, 2010 WL 3629587

(S.D.N.Y. Sept. 16, 2010). In this Circuit, courts are guided by the following factors in determining

the appropriate measure of statutory damages for copyright infringement: (i) the expenses saved and profits earned by the infringer; (ii) the revenues lost by the plaintiff; (iii) the value of the copyright; (iv) the deterrent effect on those other than the infringer; (v) the willfulness of the infringer's conduct; (vi) whether the infringer cooperated in providing records to assess the value of the material infringed; and (vii) the likelihood the award will discourage the defendant from repeating its infringement. *See Bryant*, 603 F.3d at 144; *Noble*, 2015 WL 5697780, at *6; *Usenet.com*, 2010 WL 3629688, at *4.

"Awards of statutory damages serve two purposes—compensatory and punitive." *Fitzgerald Publ'g Co.*, 807 F.2d at 1117. At the punitive end of the scale, the statutory maximum is typically reserved for "truly egregious conduct such as where a defendant has been adjudged to have willfully infringed, yet continued the same pattern of behavior in contravention of court order." *EMI Apr. Music Inc. v. 4MM Games, LLC*, 2014 WL 325933, at *5 (S.D.N.Y. Jan. 13, 2014) (quoting *Tips Exps., Inc. v. Music Mahal, Inc.*, 2007 WL 952036, at *5 (E.D.N.Y. Mar. 27, 2007)), *report and recommendation adopted*, 2014 WL 1383468 (S.D.N.Y. Apr. 7, 2014).

Here, X-Art seeks statutory damages of $750 for each infringed work – the minimum permissible award under the Copyright Act. Prop. Findings at 15; *see* 17 U.S.C. § 504(c)(1). Plaintiff has proffered no admissible evidence concerning the expenses saved or profits earned by defendant, the revenues lost by plaintiff, or the value of plaintiff's copyrights. *See* Prop. Findings at 10 (arguing, without evidence, that plaintiff's actual damages "far exceed" the sum requested here, because defendant "materially aided . . . other participants in the BitTorrent swarm of infringers," causing plaintiff to lose sales "to those thousands of infringers"). Nor does it discuss the deterrent effect of the proposed award on defendant or on others. Further, although X-Art alleges that defendant is "a habitual and persistent BitTorrent user and copyright infringer" who

acted "willfully" with regard to the Films, Amend. Compl. ¶¶ 25, 33, it provides no detail as to his conduct in connection with any works other than the Films, and in any event does not seek enhanced statutory damages for willfulness. Consequently, I have not considered whether enhanced damages are warranted here. Nor, based on the thin evidentiary record presented to me, do I have any basis for recommending an award above the statutory minimum requested by plaintiff. I therefore recommend that plaintiff be awarded a total of $6,750 in statutory damages for the nine copyrights as to which plaintiff is entitled to infringement damages.

### B.       Reasonable Costs

The Copyright Act expressly permits a party to recover its "full costs," at the Court's discretion, by or against "any party other than the United States or an officer thereof." 17 U.S.C. § 505. "[T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." *Id*. Here, plaintiff does not request any attorneys' fees. It does seek costs, in the total amount of $609, comprising the statutory filing fee of $400, as reflected on the docket of this action (Dkt. No. 1), a fee of $100 associated with the subpoena issued to defendant's ISP, and a $109 fee for service of process. Prop. Findings at 14; Conway Decl. ¶¶ 3, 8. However, plaintiff "has not provided any documentation, other than counsel's representation, to support its requests for costs, despite specifically being directed to do so." *Malibu Media, LLC v. Greenwood*, 2019 WL 7580083, at *5 (S.D.N.Y. Dec. 17, 2019), *report and recommendation adopted*, 2020 WL 209140 (S.D.N.Y. Jan. 14, 2020). Plaintiff "is therefore not entitled to full recovery of costs," *id*., although courts in this district frequently take judicial notice of "costs reflected on the docket," such as filing fees, and "award[] those costs despite the lack of documentation provided by counsel." *Id*. (collecting cases).

I recommend that the same approach be employed here, and that plaintiff be awarded $400 in costs to reimburse it for the filing fee.

### C.      Injunctive Relief

A court may "issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *King v. Nelco Indus., Inc.*, 1996 WL 629564, at \*1 (E.D.N.Y. Oct. 23, 1996); *see also Malibu Media, LLC v. Doe*, 2020 WL 2736723, at \*4 (E.D.N.Y. Apr. 7, 2020) (quoting  *Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015)) ("[a] court may grant a permanent injunction on a motion for default judgment"), *report and recommendation adopted,*  2020 WL 2734900 (E.D.N.Y. May 26, 2020). Under the Copyright Act, "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The Copyright Act also authorizes courts to order the destruction of infringing products. 17 U.S.C. § 503(b).

> To obtain a permanent injunction, the plaintiff must demonstrate:
>
> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted); *see also Realsongs, Universal Music Corp. v. 3A N. Park Ave. Rest Corp.*, 749 F. Supp. 2d 81, 93 (E.D.N.Y. 2010) ("to obtain a permanent injunction, the moving party must establish that 1) absent injunctive relief, it will suffer irreparable harm, and 2) actual success on the merits.") (internal quotation marks omitted). "Courts generally grant permanent injunctions 'where liability has been established and there is a threat of continuing infringement.'" *Malibu Media v. Doe*, 2020 WL 2736723, at \*4 (quoting J*ohn Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 637 (S.D.N.Y. 2018) (internal quotation marks and citation omitted)).

14

In this case, plaintiff has demonstrated defendant's liability, thus establishing actual success on the merits, *see BMG Music v. Pena*, 2007 WL 2089367, at \*5 (E.D.N.Y. July 19, 2007), and "irreparable harm is presumed where a party has established a *prima facie* case of copyright infringement." *Realsongs*, 749 F. Supp. 2d at 93. "Moreover, by using BitTorrent, Defendant was able to distribute copies of the copyright works to other peers continuously, thus facilitating future infringement." *Malibu Media v. Doe*, 2020 WL 2736723, at \*4. Under these circumstances, "monetary damages are insufficient to compensate Plaintiff for the injury it has suffered because such damages will not prohibit future infringement." *Id*. Moreover, "[t]here is no hardship to Defendant because a permanent injunction will do no more than prevent Defendant from engaging in further unlawful activity." *Id*. Similarly, entry of a permanent injunction against defendant "will not disserve the public interest; in fact, to the contrary, it will protect copyrighted material and encourage compliance with the Copyright Act." *Id*.

Since plaintiff has met the requisite showing to justify issuance of a permanent injunction, its request for prospective injunctive relief against defendant regarding the Films should be granted as to the nine copyrights that were registered before plaintiff instituted suit as to them, along with its request for an order requiring defendant to destroy all infringing copies of the corresponding Films in his possession. *See Malibu Media v. Doe*, 2020 WL 2736723, at \*6. However, to the extent plaintiff seeks a broader injunction or destruction order, extending to all sixteen Films – or to all of its "Works" (a term which is ambiguously defined in its inquest papers, *see* Prop. Findings at 15) – I recommend that the request be denied. Plaintiff has not succeeded on the merits as to any movies beyond the nine for which it met the pre-suit registration requirement of 17 U.S.C. § 411(a).

## V.    CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff be awarded: (i) statutory damages under the Copyright Act in the amount of $6,750; (ii) costs in the amount of $400; (iii) a permanent injunction prohibiting Baker from further infringement of the nine copyrights that were registered before plaintiff instituted suit as to them; and (iv) an order that Baker destroy all copies of the corresponding Films that he downloaded without plaintiff's authorization, including copies transferred onto any physical medium or device in defendant's possession, custody, or control.

Plaintiff is directed to serve a copy of this Report and Recommendation on defendant via first-class mail, and file proof of such service by ECF, within three days of the date below.

Dated:  New York, New York
        June 18, 2020


**BARBARA MOSES**
**United States Magistrate Judge**


## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court. Due to the COVID-19 public health emergency, paper courtesy copies should *not* be delivered to the Hon. John G. Koeltl or to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Koeltl. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).